[Crim. No. 3337. In Bank.—August 30, 1930.]

THE PEOPLE, Respondent, v. ALFRED BOSS et al., Appellants.

S. Luke Howe, H. M. Standenwick, Charles H. Crocker, Howe, Hibbits & Johnson and O. F. Meldon for Appellants.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

SEAWELL, J.—Defendants, George Boss and George Davis, were jointly tried and convicted of murder of the first degree in the Superior Court of the County of Sacramento. The jury was fully instructed as to its right to relieve either of said appellants of the death penalty, but it nevertheless refused to exercise its discretion in favor of the lesser penalty and returned a verdict which carried with it the death penalty.

The defendants, at the hour of about 6:10 o'clock P. M., November 18, 1929, entered the store of Arata Brothers, located at the northeast corner of Sixteenth and S. Streets, in the city of Sacramento, and, with firearms in hand, terrified the employees therein into submitting to the robbery of said store. Defendant Davis, threatening with a revolver in his hand, occupied a commanding position near the door by which he had entered, and was first to speak to the cashier and others present, commanding them to stand still and not move. Defendant Boss, who was near Davis, gathered up coins and currency aggregating $400, placed them in a metal pan used by the cashier for holding miscellaneous coins, and, with Davis guarding the exit and Boss carrying the money, both made their way out of the store and into the street unmolested until Clifford Carey, a young married man and an employee of the store, was seen to be pursuing the defendants, crying out, "Come help us;

let's get them!'' The defendants fled across Sixteenth Street at an angle of some 25 or 30 degrees toward an alleyway which leads from Sixteenth Street. Davis was in the lead followed by Boss, and some yards behind him was the decedent, Carey. When near the corner of Sixteenth Street and the alley, Boss fired at Carey, the bullet passed through his head, and death was instantaneous. ■ It may be noted here that the deceased was fully authorized to arrest either or both of said defendants. Section 837 of the Penal Code provides that a private person may arrest another when such other person has committed a felony, although not in his presence; or when a felony has in fact been committed and he has reasonable cause for believing the person arrested to have committed it. The person making the arrest must inform the person to be arrested of the intention to arrest him, of the cause of the arrest, and the authority to make it, except when the person to be arrested is actually engaged in the *commission* of or of an attempt to commit an offense, or is pursued *immediately* after its commission. (Sec. 841, Pen. Code.)

The position of the three men at the time the shot was fired was approximately as follows: Davis had turned or was turning into the alley; Boss was near the corner and Carey had reached the curb of the sidewalk. The shooting was in plain view of the store which they had a moment before robbed and the furthermost defendant was not more than 125 feet from said store. The pursuit was immediate and continuous and the shot was fired before a division of the loot had been effected and while both defendants were fleeing to gain their safety and carry away the fruits of their criminal enterprise. Shortly after the murder the two defendants returned to the apartments at which they had been stopping for some days past and which were within two or three city blocks of Arata Brothers' store. There they met their companions and consorts, male and female, divided the spoils between them and set out under cover of night for the state of Oregon, where they were subsequently apprehended.

There is no possible doubt as to the identification of the defendants with the crime nor can there exist a doubt as to the existence of a conspiracy on the part of the defendants to commit the said robbery and to resist with armed

force any interference whatever with their purpose or with their effort to win their way to a place of safety thereafter that the stolen treasure might be divided between them.

In *People* v. *Denman,* 179 Cal. 497 [177 Pac. 461], this court said: "We regard it as settled law in this jurisdiction that one who kills another in the perpetration or attempt to perpetrate arson, rape, robbery, burglary, or mayhem, is guilty of murder in the first degree by force of the provisions of section 189 of the Penal Code, altogether regardless of any question whether the killing was intentional or unintentional. As said in one of the cases: 'Nor is it of the slightest consequence that the conspirators may not have intended to bring about their victim's death. The killing having occurred in the perpetration of robbery was murder in the first degree. (Pen. Code, sec. 189.)' (*People* v. *Raber,* 168 Cal. 318 [143 Pac. 317]; *People* v. *Milton,* 145 Cal. 169 [78 Pac. 549]; *People* v. *Witt,* 170 Cal. 108 [148 Pac. 928].) We see no reason to doubt the correctness of the views expressed in the cases cited. Appellant's claim of error in the instructions in this behalf must be held to be unfounded." (See text and other cases cited, 13 Cal. Jur. 600, 601; *People* v. *Perry,* 195 Cal. 623 [234 Pac. 890].) ▆ The law is also well settled that where two or more persons enter into a conspiracy to commit a robbery or burglary and one of the conspirators commits a murder in the perpetration of the crime all of said conspirators are equally guilty with said co-conspirator of murder of the first degree, and it is no defense that those who did not actually participate in the killing did not intend that life should be taken in the perpetration of the robbery, or had forbidden their associate to kill, or regretted that it had been done. (*People* v. *Lawrence,* 143 Cal. 148 [68 L. R. A. 193, 76 Pac. 893].)

▆ The contention of appellants—the only one that may be urged with any show of plausibility in view of a record which forecloses all other defenses—is that the following instructions, which are conceded to be sound statements of the law as to homicides committed in the perpetration of the crimes named in section 189 of the Penal Code are inapplicable to the homicide committed in the circumstances of the instant case:

"There are certain kinds of murder which carry with them conclusive evidence of premeditation; these the legislature has enumerated in the code definition already given you, and has taken upon itself the responsibility of saying that they shall be deemed and held to be murder of the first degree. These cases are of two classes.

"First: Where the killing is perpetrated by means of poison, etc. Here the means used is held to be conclusive evidence of premeditation.

"Second: Where the *killing* is done in the perpetration or attempt to perpetrate, arson, rape, robbery, burglary or mayhem, here the *occasion* is made conclusive evidence of premeditation.

"Where the case comes within either of these two classes the question 'Is the killing wilful, deliberate and premeditated?' is answered by the statute itself, and the jury have no option but to find the prisoner guilty of murder of the first degree. Hence, so far as these two cases are concerned, all difficulty as to the question of degree is removed by the statute."

Counsel for appellants admit that said instructions would have been proper had the homicide been committed in the *perpetration* of said robbery. The point made is that the homicide was committed *after* the robbery had been completed and therefore section 187, which defines murder as being the unlawful killing of a human being, with malice aforethought, furnishes the standard by which the degree of the murder should be measured. In short, appellants seek to avoid the force of section 189, which provides that upon the commission of the homicide in the perpetration of the felonies therein named there is to be superadded to the act of killing, intent and premeditation.

It is a sound principle of law which inheres in common reason that where two or more persons engage in a conspiracy to commit robbery and an officer or citizen is murdered while in immediate pursuit of one of their number who is fleeing from the scene of the crime with the fruits thereof in his possession, or in the possession of a co-conspirator, the crime is not complete in the purview of the law, inasmuch as said conspirators have not won their way even momentarily to a place of temporary safety and the possession of the plunder is nothing more than a scram-

bling possession. In such a case the continuation of the use of arms which was necessary to aid the felon in reducing the property to possession is necessary to protect him in its possession and in making good his escape. Robbery, unlike burglary is not confined to a fixed *locus,* but is frequently spread over considerable distance and varying periods of time. The escape of the robbers with the loot, by means of arms, necessarily is as important to the execution of the plan as gaining possession of the property. Without revolvers to terrify, or, if occasion requires, to kill any person who attempts to apprehend them at the time of or immediately upon gaining possession of said property, their plan would be childlike. The defense of felonious possession which is challenged immediately upon the forcible taking is a part of the plan of robbery, or as the books express it, it is *res gestae* of the crime.

We may say here, as former Chief Justice Beatty said in *People* v. *Woods,* 147 Cal. 265 [109 Am. St. Rep. 151, 81 Pac. 652], in a case very similar in material features to the one at bar wherein the death penalty was imposed, that the appellants would put their pistols to the use to which they were provided if occasion seemed to require their use. That fortuitous circumstances may have cast the wicked act upon one rather than the other is of no consequence so far as the guilt of both is concerned. Of the several cases of this state which hold that the flight of a robber who killed an officer several blocks from the scene of the robbery is *res gestae,* it is only necessary to cite *People* v. *Woods, supra,* and *People* v. *Dowell,* 204 Cal. 109 [266 Pac. 807, 811]. In the latter case objection to the inappropriateness of an instruction similar in all respects to the one here complained of was made and we disposed of the objection in the following words:

"The objection is that the instruction was inappropriate and prejudicial because, it is said, at the time the police officer was shot and killed the robbery had been fully consummated and for that reason the murder was not committed in an attempt to perpetrate said crime. As above noted, appellant was fleeing from the scene of the robbery, carrying what he thought was the bag and money of the victim when, being pursued by the officer of the law, appellant fired upon him in order to effect his escape while

retaining the object of the crime. We are satisfied that the crime of robbery had not been completed in any sense at the time of the unlawful shooting, but on the contrary the murder was committed in the perpetration of such crime.'' (*People* v. *Dowell*, 204 Cal. 109, 118 [266 Pac. 807], see, also, *People* v. *Pool*, 27 Cal. 573.)

Our reports contain many other cases bearing more or less directly upon the point which fully support the principle of law announced in said cited cases. Cases in other jurisdictions directly in point are: *Bissot* v. *State*, 53 Ind. 408; *Conrad* v. *State*, 75 Ohio St. 52 [8 Ann. Cas. 966, 6 L. R. A. (N. S.) 1154, 78 N. E. 957]; *Clark* v. *State*, 169 Ark. 717 [276 S. W. 849]; *State* v. *Brown*, 7 Or. 186.

█ The latter case presents facts not unlike those of the instant case. The decision holds in substance that where the enterprise is one continuous act including the carrying away of property, a murder committed by one of the defendants in flight 800 feet distant from the place of robbery in order to avoid apprehension is murder in the first degree under a statute similar to ours.

Appellants place their chief reliance upon *People* v. *Marwig*, 227 N. Y. 382 [22 A. L. R. 845, 125 N. E. 535]. The facts of that case differ materially from the facts constituting the instant case. A number of important facts, such as the absence of stolen property upon the persons of the accused, distinguish it from the case at bar. The point is also made that if any property was actually stolen the case would further have been affected by the value of said property in order to determine whether the crime committed by the defendants was a felony or a misdemeanor. The case is not a satisfactory treatment of the law and it is not in full harmony with earlier decisions of the same court. Interesting annotations on said case are reported in 22 A. L. R. 850.

The few cases which hold to the view taken by appellants are generally cases in which the crime is held to be completed upon an entry or breaking into a building and the conclusions therein are influenced by the rule of law that a felonious entry or breaking is sufficient to constitute the crime. That rule was adopted to make punishment of this class of crime more certain. It was not intended to relieve the wrongdoer from any probable consequences of his act

by placing a limitation upon the *res gestae* which is unreasonable or unnatural.

■ The evidence in the case also is sufficiently conclusive to warrant the verdicts of the jury upon the theory alone of conspiracy. That the defendants had an understanding between them that they were to resort to the use of firearms which they· carried upon their persons to gain their liberty, there can be no reasonable doubt. This conclusion has been sustained by this and other courts in cases where the circumstances of the killing were substantially as those existing in the instant case. The remark of defendant Davis made to his associates soon after the killing to the effect that "they had to shoot their way out" is but the natural expression of their determination. The jury was fully and correctly instructed as to the law of the case. The court scrupulously instructed the jury as to their power to relieve both or either of the defendants from the extreme penalty of the law and impose a sentence of life imprisonment instead if in the exercise of their discretion the facts and circumstances warranted it. The trial was fair and without prejudicial error.

The judgments and order appealed from are affirmed.

Richards, J., Waste, C. J., Preston, J., and Curtis, J., concurred.

Rehearing denied.