[No. A051382. First Dist., Div. Four. Apr. 13, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN EDWARD JOHNSON, JR., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Parts II and IV through VIII are not certified for publication. (See Cal. Rules of Court, rules 976(b) and 976.1.)

## COUNSEL

Fern M. Laethem, State Public Defender, under appointment by the Court of Appeal, and David Sundelson, Deputy State Public Defender, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Ronald S. Mathias and Herbert F. Wilkinson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**REARDON, J.**—A jury convicted appellant John Edward Johnson, Jr., of first degree murder with special circumstances. He pled guilty to charges of assault with a firearm, vehicle theft, being an ex-felon in possession of a deadly weapon, and two counts of robbery. Sentenced to a life term without possibility of parole for murder that is to be served consecutive to a determinate term of nine years, four months for the other offenses, Johnson appeals. He contends that: (1) the trial court committed *Wheeler*[1] error; (2) the evidence was insufficient to support the murder conviction or the special circumstances allegations; (3) the trial court erred by admitting photographs of the victim, testimony about the victim's life, and his extrajudicial statement, allegedly taken in violation of *Miranda*[2]; (4) instructional error deprived him of a fair trial; (5) he was wrongfully charged with and convicted of a crime about which no evidence was introduced and no instructions were received; (6) the trial court violated his right to appointed counsel; and (7) his life sentence without possibility of parole constitutes cruel or unusual punishment. We conclude that Johnson is entitled to a new sentencing hearing, but otherwise affirm the judgment.

## I. FACTS

On May 13, 1989, Elaine Williams died as the result of an automobile accident. The car she was driving was struck by a car driven by appellant John Edward Johnson, Jr. Thirty minutes earlier, Johnson had robbed two men of cash and a ring and had fled in a stolen vehicle. The robberies had been immediately reported to police, who set up a countywide roadblock in an attempt to apprehend the robber. Various law enforcement officers spotted

---

[1] See *People* v. *Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748].
[2] See *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

Johnson's vehicle as he drove from the robbery site toward the San Francisco International Airport.

Before Williams's vehicle was hit, Johnson had lost control of the stolen car, which was moving at least 58 miles per hour. After impact, Johnson left the car and entered a nearby marsh. He was arrested on the other side of it. Police later retrieved a revolver and cash from the marsh and found a ring and a warm-up suit in the car.

Johnson was advised of and waived his *Miranda* rights, agreeing to talk to San Mateo Police Officer Malcolm Laner. After a short interview, he sought counsel. Laner stopped the questioning and advised him that he would be charged with murder and armed robbery. Johnson then told Laner, " '[i]t was just because I heard the sirens.' "

Johnson was charged with the murder of Williams, enhanced by the use of a firearm. (See Pen. Code, §§ 187, 12022.5.)[3] The information also alleged two special circumstances: that Johnson killed Williams during the commission of the two robberies. (See § 190.2, subd. (a)(17)(i).) It charged two counts of robbery; one count of assault with a deadly weapon and one count of attempted murder, each enhanced by the use of a firearm; and single counts of vehicle theft and being an ex-felon in possession of a firearm. (See §§ 187, 211, 245, subd. (a)(2), 664, 12021, subd. (a), 12022.5; Veh. Code, § 10851.) Finally, it alleged that Johnson had suffered a prior felony conviction. (See § 667.5, subd. (b).)

Johnson pled guilty to assault with a firearm, vehicle theft, being an ex-felon in possession of a deadly weapon, and two counts of robbery and admitted the truth of three firearm use enhancement allegations. (See §§ 211, 245, subd. (a)(2), 12021, subd. (a); Veh. Code, § 10851.) Trial of the prior conviction allegation was bifurcated from the balance of the trial. The attempted murder charge was dismissed on the People's motion, as was the firearm use allegation charged in connection with the murder.

At trial, Johnson testified that after the San Mateo robberies, he drove south on Highway 101 to Highway 92 and saw no one follow him. He drove to Highway 280, but no one was chasing him. Driving north on Highway 280, he first saw what appeared to be a law enforcement officer in a vehicle. When the officer turned on his red and blue flashing lights, Johnson sped up. When he lost sight of the pursuing car, Johnson turned off the freeway and drove for eight or nine minutes in a residential area. During this period, he saw no police and thought he was safe. Johnson testified that he then drove

---

[3]All statutory references are to the Penal Code unless otherwise indicated.

through the residential area to El Camino Real in Burlingame and headed back to Highway 101. Heading north, Johnson thought he saw another police officer, so he got off the freeway at the Millbrae exit. Then, Johnson spotted the airport police, who began to pursue him. He drove on toward the airport, where another police vehicle began to follow him. Johnson testified that this vehicle did not have lights or sirens on. He passed a van and hit another car very hard. Dizzy and shaken, he fled the scene but was soon arrested.

Johnson admitted the robberies, assault and automobile theft charges, but denied making any statement about hearing sirens. On rebuttal, an officer who participated in the countywide roadblock testified that if Johnson had taken the Millbrae exit off Highway 101 north as he had testified, the officer would not have seen Johnson's car as he did. An officer had testified that he had driven from the robbery site to a location about 4 miles from the accident site by freeway—a distance of 22 miles—in 22 minutes and 40 seconds. Driving two slightly different routes took approximately one minute longer. The prosecution argued that the accident occurred within 30 minutes after Johnson fled the robbery site. Johnson countered that he had reached a place of temporary safety before police began to pursue him. Ultimately, the jury found Johnson guilty of first degree murder and found both of the special circumstances allegations to be true.

At sentencing, Johnson moved to dismiss his defense counsel. After the request was denied, the prior conviction allegation was dismissed on the People's motion and a motion for judgment notwithstanding the verdict was rejected. The court imposed a term of nine years, four months on the determinate sentencing offenses and a consecutive term of life imprisonment without possibility of parole for the first degree murder conviction.

## II. WHEELER ERROR*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III. SUFFICIENCY OF EVIDENCE

### A. *Generally*

Johnson next contends that the evidence was insufficient to support both the first degree murder conviction or the special circumstances allegations.

---

*See footnote, *ante*, page 552.

(See §§ 187, 190.2, subd. (a)(17)(i).)[5] He argues that there was insufficient evidence to support the finding that the murder took place in the commission of the robberies. Both the first degree felony-murder verdict and the special circumstances aspects of the jury's verdict depend on a finding that the robberies continued until the homicide occurred. At trial, his motion for a judgment of acquittal on the special circumstances allegations, the success of which would have precluded a verdict of first degree felony murder, was denied. (See § 1118.1.) On appeal, he contends both that the motion was improperly denied—that the People's case-in-chief was insufficient to support the conviction and findings—and that the evidence in the record as a whole was insufficient to support the verdict.

 When appeal of a conviction or a special circumstances finding is based on a claim of insufficient evidence, we must determine whether any rational trier of fact could have found the essential elements of the crime and the special circumstances finding beyond a reasonable doubt. (*People* v. *Morris* (1988) 46 Cal.3d 1, 19 [249 Cal.Rptr. 119, 756 P.2d 843] [special circumstances finding]; *People* v. *Rushing* (1989) 209 Cal.App.3d 618, 621 [257 Cal.Rptr. 286] [criminal offense]; see *Jackson* v. *Virginia* (1979) 443 U.S. 307, 319 [61 L.Ed.2d 560, 573, 99 S.Ct. 2781] [criminal offense]; *People* v. *Towler* (1982) 31 Cal.3d 105, 118 [181 Cal.Rptr. 391, 641 P.2d 1253] [criminal offense].) We must view the evidence in the light most favorable to the judgment and must presume in support of that judgment every fact that the trier of fact could reasonably deduce from the evidence. (*People* v. *Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321]; *People* v. *Rowland* (1982) 134 Cal.App.3d 1, 6 [184 Cal.Rptr.346].) To survive an insufficiency of evidence challenge, the evidence must be substantial enough to support the finding of each essential element of the crime and special circumstance. Substantial evidence is that which is reasonable, credible and of solid value. The trier of fact weighs the evidence presented, resolves conflicts in the testimony and draws reasonable inferences from the facts before it. If its findings are reasonable and supported by the evidence, reversal of the conviction or of the special circumstances finding is not warranted even if a contrary finding might also be reasonable. (*People* v. *Rushing, supra*, at p. 621 [criminal offense]; see *People* v. *Morris, supra*, at p. 19 [special circumstances finding]; *People* v. *Towler, supra*,

[5]"Murder is the unlawful killing of a human being . . . with malice aforethought." (§ 187, subd. (a).) "(a) The penalty for a defendant found guilty of murder in the first degree shall be death or confinement in state prison for a term of life without the possibility of parole in any case in which one or more of the following special circumstances has been charged and specially found . . . to be true: . . . [¶] (17) The murder was committed while the defendant was engaged in or was an accomplice in the commission of, attempted commission of, or the immediate flight after committing or attempting to commit . . . [¶] (i) Robbery in violation of Section 211." (§ 190.2, subd. (a)(17)(i).)

at p. 118 [criminal offense].) Before the trial court's judgment may be set aside for insufficiency of evidence to support the jury's verdict, it must clearly appear that on no hypothesis whatever is there sufficient evidence to support it. (*People v. Redmond, supra,* at p. 755.)

## B. *Place of Temporary Safety*

 Johnson argues that the evidence established that the robberies had ended—that he had reached a place of temporary safety—before the homicide occurred. He urges that this determination turns on his state of mind, rather than on an objective, reasonable person standard. Johnson testified at trial that he felt safe before police began to pursue him. On appeal, he argues that there was no evidence to contradict his testimony; thus, there was no substantial evidence to support the contrary finding that was necessarily made by the jury when it found him guilty of first degree murder and found the special circumstances allegations to be true.

The issue of whether the "place of temporary safety" is determined on an objective or subjective standard appears to be a case of first impression. However, the law of felony murder is well settled. One who kills another in the perpetration of a robbery is guilty of first degree murder, whether the killing is intentional or unintentional. (*People v. Boss* (1930) 210 Cal. 245, 249 [290 P. 881]; see *People v. Salas* (1972) 7 Cal.3d 812, 823-824 [103 Cal.Rptr. 431, 500 P.2d 7, 58 A.L.R.3d 832], cert. den. 410 U.S. 939 [35 L.Ed.2d 605, 93 S.Ct. 1401].) To find a robbery-murder special-circumstance allegation to be true, a jury must find that the murder was committed during the commission of a robbery. (*People v. Morris, supra,* 46 Cal.3d at p. 19; see § 190.2, subd. (a)(17)(i).) When an officer or citizen is murdered while in immediate pursuit of a robber who flees from the scene of the crime with the fruit of that offense, the killing is in perpetration of the robbery—a crime that is not legally complete until the robber has won his or her way even momentarily to a place of temporary safety. (*People v. Salas, supra,* at p. 822; *People v. Boss, supra,* at pp. 250-251; see *People v. Milan* (1973) 9 Cal.3d 185, 195 [107 Cal.Rptr. 68, 507 P.2d 956]; *People v. Laursen* (1972) 8 Cal.3d 192, 200, fn. 6 [104 Cal.Rptr. 425, 501 P.2d 1145], cert. den. 412 U.S. 915 [37 L.Ed.2d 142, 93 S.Ct. 2738].) When the robber is still in flight, he or she has not yet achieved a place of temporary safety. (*People v. Salas, supra,* at p. 822; see *People v. Fuller* (1978) 86 Cal.App.3d 618, 623 [150 Cal.Rptr. 515] [burglary].)

 Whether a defendant has reached a place of temporary safety is a question of fact for the jury. (See *People v. Fuller, supra,* 86 Cal.App.3d at p. 623 [burglary].) Case law does not specifically address whether this

determination is to be based on the defendant's subjective belief or whether objective criteria are also relevant to this inquiry. However, we are satisfied that an objective standard is to be applied. The black letter law announced in the relevant cases states the rule in terms of whether the defendant actually reached a place of temporary safety, rather than whether the defendant believed that he or she reached such a safe location. (See *People* v. *Milan, supra,* 9 Cal.3d at p. 195 [robbery incomplete until robber "has won his way to a place of temporary safety"]; *People* v. *Laursen, supra,* 8 Cal.3d at p. 200, fn. 6 [robbery does not terminate "until the robber reaches a location of temporary safety"]; *People* v. *Salas, supra,* 7 Cal.3d at p. 822 [robbery was not complete "as the robbers had not won their way to a 'place of temporary safety' "]; *People* v. *Boss, supra,* 210 Cal. at p. 250 [robbery incomplete until robbers have "won their way even momentarily to a place of temporary safety"]; see *People* v. *Fuller, supra,* at p. 623 [burglary continues during flight "as long as the felon has not reached a 'place of temporary safety.' "].) This conclusion is also consistent with the standard jury instructions on the completion of the crime of robbery. (See CALJIC No. 9.44 (5th ed. 1988) [robbery is complete when the perpetrator "has reached a place of temporary safety"].)

Certainly, appellate courts have considered the defendant's belief about whether he or she reached a place of temporary safety. (See, e.g., *People* v. *Kendrick* (1961) 56 Cal.2d 71, 90 [14 Cal.Rptr. 13, 363 P.2d 13] [defendant's belief that officer was about to arrest him for robbery, among other evidence, establishes that robbery was not yet complete].) However, this does not indicate that the defendant's state of mind is dispositive on this issue. Objective criteria have also been considered relevant to this issue. The fact that Williams was killed 30 minutes after the robbery does not preclude a finding that the homicide occurred in the commission of the robbery. (See, *id.*, at pp. 76-78, 89-90 [time lapse, distance between felony and murder]; *People* v. *Fuller, supra,* 86 Cal.App.3d at pp. 621-628 [homicide resulting from high-speed chase].)

Finally, in first degree felony-murder cases, the prosecution must prove only that the defendant intended to commit the underlying offense—it need not establish malice, premeditation or deliberation. (See *People* v. *Dillon* (1983) 34 Cal.3d 441, 475-477 [194 Cal.Rptr. 390, 668 P.2d 697].) To also require the People to establish an additional state of mind—that the defendant did not believe that he reached a place of temporary safety—would thwart application of the felony-murder rule. For all these reasons, we conclude that the issue to be resolved is whether a robber had actually reached a place of temporary safety, not whether the defendant thought that he or she had reached such a location.

Thus, the issue of whether Johnson believed that he reached a place of temporary safety is only one factor for the jury to consider. At trial, Johnson argued that he had driven in a residential area for eight or nine minutes before returning to the freeway where police pursuit began. The prosecution attempted to prove that this was not possible—that, given the time elapsed and distance between the robberies and the accident, Johnson must necessarily have been in constant flight. The prosecution bolstered its argument with other objective evidence: Johnson did not have time to dispose of the gun or the stolen property or to change into the warm-up suit that the state theorized he had placed in the stolen car to alter his appearance after the robberies. The jury's verdict of first degree felony murder and the two special circumstances findings imply that it found the prosecution's theory more plausible and therefore rejected Johnson's argument. This issue was within the jury's purview. (See *People* v. *Fuller, supra,* 86 Cal.App.3d at p. 623 [burglary].)

We may not set aside the trial court judgment for insufficiency of evidence unless it clearly appears that under no hypothesis whatever is there sufficient evidence to support it. (*People* v. *Redmond, supra,* 71 Cal.2d at p. 755.) Under the prosecution's hypothesis, the jury could have found that Johnson did not reach a place of temporary safety. Thus, there was sufficient evidence and reasonable inferences from that evidence to support the jury's verdict on both the special circumstances findings and the first degree murder conviction.

## C. *Continuing Transaction*

Johnson also argues that the robbery and homicide were not parts of a continuing transaction. First degree felony murder does not require a strict causal relation between the felony and the killing. The only nexus required is that both are part of one continuous transaction. (*People* v. *Thompson* (1990) 50 Cal.3d 134, 171 [266 Cal.Rptr. 309, 785 P.2d 857], cert. den. __ U.S. __ [112 L.Ed.2d 180, 111 S.Ct. 226]; *People* v. *Ainsworth* (1988) 45 Cal.3d 984, 1016 [248 Cal.Rptr. 568, 755 P.2d 1017], cert. den. 488 U.S. 1050 [102 L.Ed.2d 1006, 109 S.Ct. 883]; *People* v. *Fuller, supra,* 86 Cal.App.3d at p. 623.) A fleeing robber's failure to reach a place of temporary safety is sufficient to establish the continuity of the robbery within the felony-murder rule. (*People* v. *Salas, supra,* 7 Cal.3d at p. 823.) We have already found that there was sufficient evidence to support the jury's implied finding that Johnson did not reach a place of temporary safety before the killing occurred. (See pt. III.B., *ante.*)

Robbery is not confined to a fixed location, but may be spread over a considerable distance and varying periods of time. (*People* v. *Laursen, supra,*

8 Cal.3d at p. 199; *People* v. *Salas, supra,* 7 Cal.3d at p. 822; *People* v. *Boss, supra,* 210 Cal. at p. 251.) Thus, the fact that Williams was killed 30 minutes after the robbery does not preclude a finding that the homicide occurred in the commission of the robbery. (See, e.g., *People* v. *Kendrick, supra,* 56 Cal.2d at pp. 89-90 [48-minute time lapse].) Likewise, the fact that the homicide occurred more than 22 miles from the robbery does not necessarily preclude a finding that the killing occurred in the commission of the robbery. (See *id.* at pp. 76-78, 89-90 [San Bernardino to near Victorville].) A burglar fleeing from police may be prosecuted for felony murder when a high-speed chase leads to an automobile accident, killing the driver of the other vehicle. (See *People* v. *Fuller, supra,* 86 Cal.App.3d at pp. 621-628.) The jury had before it the evidence from which to properly determine that the killing of Elaine Williams was a continuing part of the robberies.

### IV.-VIII.*

. . . . . . . . . . . . . . . . . . . . . . . .

### IX. CONCLUSION

The matter is remanded for resentencing in accordance with the opinions expressed in this opinion. In all other respects, the judgment is affirmed.

Anderson, P. J., and Perley, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 9, 1992. Kennard, J., was of the opinion that the petition should be granted.

---

*See footnote, *ante,* page 552.