Filed 6/9/15  P. v. Villeda CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  The opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G049883 |
| v. | (Super. Ct. No. 12CF3557) |
| JUAN CARLOS VILLEDA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Lance Jensen, Judge.  Affirmed.

Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Stacy Tyler, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

A jury convicted defendant Juan Carlos Villeda of assault by force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4); all statutory citations are to the Penal Code).  The trial court found Villeda had suffered a prior conviction for attempted robbery, a serious or violent felony, within the meaning of the Three Strikes law (§ 1170.12, subds. (b), (c)(1); § 667, subds. (d) and (e)(1)).  Villeda contends there is insufficient evidence to support the conviction.  Alternatively, he argues the trial court abused its discretion in declining to strike his prior conviction.  (§ 1385; *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.)  For the reasons expressed below, we affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND

On the evening of December 8, 2012, Jeremy Silva had just left work at a Santa Ana restaurant when he saw two men grappling and throwing punches outside a nearby bar.  He noticed one man wore jeans and a gray sweatshirt and the other wore a white shirt.  During the clash, the man wearing the white shirt ended up on the ground.

About 10 minutes later, Silva heard someone in the parking lot of an adjacent grocery store scream something like, "Do you want some more shit?"  Silva spotted a man lying on the ground, helpless and apparently unconscious.  The other man kicked the downed man's body three times, and stomped on his face twice, yelling "I told you" several times.  Silva ran over, yelled, "stop," and intervened to prevent further harm.  The man on the ground, Jonathan Sanchez,[1] was bleeding from his ears and had numerous cuts on his swollen face.

---

[1]     Sanchez testified and identified himself using his first name and last initial. We discern no statutory or other basis for the nondisclosure of his surname and will use it in this opinion.

2

Sanchez testified his former father-in-law, Wilfredo Audon, asked Sanchez to join him for an evening in the bar. Audon brought along his stepson, Villeda, who wore jeans and a gray shirt. Sanchez consumed two whiskeys, while Audon and Villeda drank beer. As the group left the bar, Sanchez offered to shake Villeda's hand, but Villeda grabbed Sanchez's hand and began throwing punches. Sanchez did not strike back. They ended up on the ground with Villeda on top of Sanchez before Audon and other bystanders separated them. Sanchez did not know why the fight occurred. He and Villeda did not have any prior disputes.

Audon and Villeda walked away. Sanchez got into his truck and called Audon to find out why the fight occurred. Audon said he did not know what prompted the fight and told Sanchez he and Villeda were at the grocery store if Sanchez wanted to talk and "solve things" with Villeda. Admittedly angry, Sanchez drove to the store to find out "what was going on or why that happened." Sanchez parked and screamed something at Villeda. Sanchez first claimed he did not remember what occurred next, but then recalled punching Villeda, who returned Sanchez's blow with one of his own. Sanchez's next recollection was waking up in the hospital.

Sanchez suffered a broken nose, had trouble breathing, and endured tremendous pain. He received stitches because "two parts of [his] lip . . . were falling apart." Sanchez spent two days in the hospital, and took pain medication for over a month. As a result of the beating, Sanchez experienced cognitive difficulties and panic attacks.

When police officers arrived at the scene, Audon was cradling Sanchez and helping him stand, but Villeda had fled the scene. When officers arrived at Villeda's apartment, they found him on a couch next to a bag of clothing containing jeans, a gray hooded sweatshirt, and tennis shoes. Officers observed dried blood on his left pants leg and blood stains on the shoes. Villeda did not have any injuries on his face, but his

3

knuckles were swollen and there was a cut on his right index finger. He denied getting into a fight, claiming he burned himself lighting a candle.

Audon testified he and Villeda asked Sanchez to join them at a local bar. There were no arguments as they drank and visited. Both men worked for Audon and they chatted about work. The men decided it was time to go home, and went outside. Villeda and Sanchez shook hands, then grabbed each other, and both ended up on the ground. Audon and a security guard separated them. Audon and Villeda walked to a nearby store to buy beer. As they were leaving, Sanchez drove up and said something like, "Come on, let's finish this." Sanchez approached Villeda, and started throwing punches, but Villeda knocked Sanchez down with a single punch. Audon claimed he did not see Villeda kick Sanchez, but police officers who interviewed Audon at the scene testified Audon admitted seeing Villeda repeatedly kick Sanchez as he lay on the ground, and Audon told Villeda to stop because Sanchez was unconscious. Audon "felt that was wrong because [Sanchez] was already knocked out" and he "could not defend himself."

Following trial in October 2013, the jury convicted Villeda as noted above. In February 2014, the trial court found Villeda had suffered a prior conviction for attempted robbery in May 2010 within the meaning of Three Strikes law. In March 2014, the court imposed a prison term of six years eight months, comprised of the six-year midterm (three years doubled because of the strike prior conviction) for aggravated assault and a consecutive eight-month term (one-third midterm) for attempted robbery based on Villeda's violation of probation for the attempted robbery.

II

DISCUSSION

A. *Substantial Evidence Supports Villeda's Conviction for Assault by Means of Force Likely to Cause Great Bodily Injury*

Villeda contends we must reverse his conviction for assault by means of force likely to cause great bodily injury because a reasonable trier of fact could not have

4

found the prosecution sustained its burden of proving he used unnecessary force to repel Sanchez's attack. We disagree.

"When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence – that is, evidence that is reasonable, credible, and of solid value – from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.) The question is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 318-319; *People v. Johnson* (1992) 5 Cal.App.4th 552, 558.) We may not reverse "'unless it appears "that upon no hypothesis whatever is there sufficient evidence to support" the jury's verdict.'" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

The information charged Villeda with a violation of section 245, subdivision (a)(4), which punishes any person "who commits an assault upon the person of another by any means of force likely to produce great bodily injury." "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) Section 245, subdivision (a)(4), prohibits the use of "force *likely* to produce great bodily injury, whether the victim in fact suffers any harm is immaterial." (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028.) An assault by the use of hands, fists or feet may support a conviction of assault by means of force likely to produce great bodily injury. (*Ibid.; People v. Sargent* (1999) 19 Cal.4th 1206, 1221 [whether force used by the defendant was likely to produce great bodily injury is a question for the trier of fact to decide].)

A person acts in lawful self-defense when the person reasonably believes she is in imminent danger of suffering bodily injury, she reasonably believes the immediate use of force is necessary to defend against the danger, and she uses no more

force than reasonably necessary to defend against the danger. (*People v. Villanueva* (2008) 169 Cal.App.4th 41, 49-50; CALCRIM No. 3470.) The prosecution has the burden to prove a defendant did not act in self-defense. (*People v. Adrian* (1982) 135 Cal.App.3d 335, 340-342 [prosecution must disprove self-defense to prove unlawful use of force for assault].)

Villeda contends the evidence shows he acted in self-defense and used only the force necessary to defend himself. He asserts Sanchez drove to the grocery store to confront him, screamed at him, ran toward him, and punched him. He states, "[t]he fight was short-lived; it was over in seconds" and his "limited conduct was necessary and justified to repel Sanchez from attacking [him]." He also notes the jury found insufficient evidence he inflicted great bodily injury, which he interprets to mean he "used minimal force to repel Sanchez's attack and that the case against appellant is weak and exaggerated." We do not find Villeda's argument persuasive.

The jury reasonably could conclude Villeda exceeded the force necessary to defend himself when he kicked Sanchez several times in the body and face as Sanchez lay helpless and unconscious on the ground. The right to use force in self-defense continues only as long as the danger exists or reasonably appears to exist. (*People v. Pinholster* (1992) 1 Cal.4th 865, 966, disapproved on another ground in *People v. Williams* (2010) 49 Cal.4th 405, 459.) Assuming Sanchez was the initial attacker, the jury reasonably could conclude Sanchez was no longer capable of inflicting injury because he was unconscious when Villeda continued to pummel him. (*People v. Parrish* (1985) 170 Cal.App.3d 336, 352 [even if the initial encounter afforded right to self-defense, the defense did not justify "recurrent attacks upon the victim while he lay on the ground helpless and unconscious"].) As Audon observed, Villeda kicked Sanchez on the ground after he was knocked out and could not defend himself. As for Villeda's claim the jury's finding on the great bodily injury enhancement reflected the jury found he "used minimal force to repel Sanchez's attack," the jury may have concluded that

6

while Villeda employed force likely to cause great bodily injury, he did not actually inflict great bodily injury, defined as significant or substantial injury that is more than minor or moderate. (See CALCRIM No. 3160 [defining great bodily injury as significant or substantial physical injury].) Substantial evidence supports the conviction.

B. *The Trial Court Did Not Abuse Its Discretion in Declining to Strike Villeda's Prior Strike Conviction*

Villeda contends the trial court abused its discretion by declining to exercise its authority under section 1385, subdivision (a), to strike his prior May 2010 conviction for attempted robbery (§§ 211, 664), which triggered application of the Three Strikes law and resulted in a doubling of the principal term. (§§ 667.5, subds. (b)-(i), 1170.12.) We discern no abuse of discretion.

Section 1385 provides, "(a) The judge . . . may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons for the dismissal shall be stated orally on the record. The shall also set forth the reasons in an order entered upon the minutes." The trial judge may in furtherance of justice strike a finding under the Three Strikes law that a defendant has previously been convicted of a serious or violent felony. (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 529-530.) In determining whether to strike a prior conviction finding, the court must "consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of [the defendant's] background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).)

We review a trial court's refusal to strike a prior conviction finding under section 1385 for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 375-376 (*Carmony*).) The defendant bears the burden of showing the trial court's sentencing

7

decision was irrational or arbitrary. (*Id.* at pp. 376-377.) "'"In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review."'" (*Ibid.*)

The trial court considered the sentencing report, which reflected Villeda was 23 years old at the time of sentencing. His juvenile record began in April 2006, when he was 16. Officers were dispatched to Villeda's residence after receiving a hang-up 911 call. Villeda shouted at the officers and refused to remove his hands from his pockets. Villeda's mother told the officers she was afraid of him and complained he was a constant disciplinary problem, refused to listen to her, and had no respect for authority or rules. Authorities filed a petition alleging Villeda resisted or obstructed an officer, and Villeda was required to perform community service and complete a legal awareness program.

In March 2008, Villeda vandalized a former friend's vehicle by scratching "U a bitch" into the paint, although the case was not prosecuted. In a separate incident, he pleaded guilty to possessing alcohol in a public place and failing to appear. In September 2009, police officers searched Villeda after a traffic stop and found a baggie with 0.7 grams of marijuana in his pocket. Villeda claimed it belonged to his cousin, who was driving the car. He later pleaded guilty. Finally, in November 2009, a victim confronted Villeda removing personal property from the victim's vehicle. Villeda held up a glass bottle in a threatening manner and demanded money. He was convicted of attempted robbery, received probation and was on probation for this offense at the time of the current crime.

In the probation report, Villeda described himself as "mischievous" and this caused him to get into trouble. The report reflected Villeda had been expelled from middle school and high school for fighting, never obtained a driver's license, and had an inconsistent employment record. Villeda had one major and one minor disciplinary

8

violation while in custody. Villeda described the major violation as "horse playing," but the other inmate went to the hospital for a laceration to his lower lip.

Villeda's progress on probation was unsatisfactory. He violated probation by loitering, associating with other probationers, running from the police, public intoxication, and failing to provide proof of employment. He earned a diploma, but discontinued attending college classes. He began using marijuana in sixth grade, and alcohol in ninth grade, but did not believe he had a drug or alcohol problem, and refused to complete paperwork for an alcohol and drug treatment program. He had been homeless for two years after his conviction in 2009. Villeda reported he believed his father had been incarcerated in Maryland and later deported.

Villeda argues he does not fall within the spirit of the Three Strikes Law. He asserts he "suffered his prior strike in 2009 when he was 19 years old" and had not suffered any other criminal convictions until the current offense. He notes he was not armed, the evidence demonstrates Sanchez was the aggressor, and he did not inflict great bodily injury.

The trial court declined to strike the conviction. It relied on its assessment of Villeda's background and character, the nature of his prior felony, the fact Villeda was on probation at the time of the current offense and his poor performance on probation, his prior "run-ins with the law," and "a pattern of increasing severity."

The record reflects the trial court considered the relevant factors in reasonably exercising its discretion to find Villeda did not fall outside the spirit of the Three Strikes law. Given Villeda's history of fighting and acting out, violent criminality, failure to accept responsibility for his behavior and tendency to blame others, absence of remorse, poor performance on probation, lack of respect for authority, lack of job skills or prospects, and refusal to acknowledge a drug or alcohol problem or take steps to address it, the trial court's refusal to strike the priors did not fall outside the bounds of reason under the applicable law and the relevant facts. (*Williams, supra,* 17 Ca1.4th at

9

pp. 162-163.)  The court abuses its discretion only in "an extraordinary case – where the relevant factors described . . . manifestly support the [dismissing] of a prior conviction and no reasonable minds could differ." (*Carmony, supra,* 33 Cal.4th at p. 378.)  Villeda fails to establish the court's refusal to strike his strikes constituted an abuse of discretion.

III

DISPOSITION

The judgment is affirmed.


ARONSON, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.