Filed 10/25/13  P. v. Soy CA3

# NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C070781 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF09-5499) |
| v. | |
| NAVEY CHRISTOPHER SOY, | |
| Defendant and Appellant. | |
| THE PEOPLE, | C071638 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF09-5499) |
| v. | |
| RENWICK McKAY DRAKE, JR., | |
| Defendant and Appellant. | |

After a six-day joint trial, a jury convicted codefendants Navey Christopher Soy and Renwick McKay Drake, Jr., of the robbery and assault with a gun of one victim, and the assault with a gun of a second victim; it also sustained gang enhancements on all

1

three counts as to both defendants, and sustained allegations that both defendants had personally fired a gun. The jury was unable to reach verdicts on two counts; the trial court declared a mistrial as to the counts, and later dismissed them on the motion of the prosecutor. As neither defendant raises any issue with respect to sentencing, we note only that the trial court imposed a determinate term in excess of 37 years as to defendant Soy, and a determinate term of 24 years as to defendant Drake (after striking the punishment for the gang enhancement in the interests of justice (Pen. Code, § 186.22, subd. (g)).[1]

We have consolidated their separate appeals for purposes of decision only. Defendant Soy contends that a special prosecution instruction (to the effect that the specific intent necessary for the gang enhancement "may be proven" from evidence that a defendant committed the present offenses in concert with another gang member) was duplicative, argumentative, and an impermissible mandatory presumption. Defendant Drake argues that the trial court (or trial counsel) should have included an instruction to the effect that the jury could not sustain the gun enhancement if it found that he fired the gun after he reached a place of temporary safety following the robbery. We shall affirm the judgments in both appeals.

### FACTUAL AND PROCEDURAL BACKGROUND

In late November 2009, the robbery victim (who had just cashed his paycheck) went with two friends to a skateboard park, where he had arranged to buy marijuana from a football acquaintance. He opened an envelope full of the cash he was carrying, mentioning that he had just been paid. The defendants were nearby. Defendants

---

[1] We note a typographical error in the abstract of judgment for defendant Drake, which refers to dismissed count 5 in connection with the second assault conviction, rather than count 6 on which the jury actually returned its guilty verdict. We will direct the court to prepare and forward a corrected abstract.

approached the robbery victim and the dealer. Defendant Soy pulled out a gun and pointed it at them, telling them not to do anything stupid. He said to the robbery victim, "You just got paid, give me your money" and told defendant Drake to search the robbery victim. After defendant Drake took the robbery victim's money and cell phone, the two started to walk away. Defendant Soy turned around as the robbery victim followed them, made reference to his gang (which frequented the nearby basketball courts), called the robbery victim a "mob bitch," and fired his gun at him.

Not believing initially that this was a real gun, the robbery victim and his friends set out in pursuit after defendants. They heard another gunshot, and one of the friends dropped out of the chase. The remaining two followed defendants through the parking lot of a high school, across the street into an elementary school yard, and over a fence into a post office parking lot, by which point they had lost sight of defendants. They stood in the parking lot looking around for a minute or two, hearing sounds, and were about to give up the chase when they saw defendants about 20 feet away appear from behind some cars. Defendant Soy pointed the gun at the pursuers, who waited until there was a safe enough distance and then began to follow defendants again. The robbery victim heard another gunshot. They reached a drug store parking lot.

The robbery victim shouted at defendants that if they would at least return his cell phone, he would stop tailing them. Defendant Drake slid the phone in the robbery victim's direction. The robbery victim retrieved it and called 911. Defendant Drake was now holding the gun. Defendant Soy told him to fire it. A bullet hit the trees above the heads of the robbery victim and the assault victim. Defendants jumped over a wall; their pursuers stopped the chase. As the assault victim described it, "[W]e were always in pursuit until we got to . . . the end of the chase where they hopped over the wall and the police came. We no longer chased them. We didn't want to hop the wall." (Italics added.)

As summarized in the briefing, there was evidence of the gang's activities, and ample evidence of defendant Soy's connection with the gang. The only gang evidence connected with defendant Drake was unspecified gang graffiti found in his bedroom, and his recorded conversation with defendant Soy in which the former mentioned he would be validated as a member of the gang as a result of the offenses. In striking defendant Drake's punishment for the gang enhancement, the trial court cited his age (just under 16 at the time of the offenses), and the fact that he was not a validated gang member at the time of the offense (even though he was aware that defendant Soy, whom he idolized, was a gang member and was committing the offenses for the benefit of the gang).

## DISCUSSION

### I. The Special Gang Instruction Was Proper

During the jury instruction conference, counsel for defendant Soy acceded to the prosecution's request for a special instruction, agreeing that it was a proper statement of the holding in *People v. Albillar* (2010) 51 Cal.4th 47 (*Albillar*) (the trial court referring to "[West] headnote 20") after the trial court pointed out that the proposed instruction used "may," not "must."[2] The trial court thus instructed the jury, "Specific intent to promote, further, or assist criminal conduct by gang members may be proven by establishing that the defendant intended to and did commit the current offense with a known gang member."

---

[2] In the text of the opinion associated with that headnote, the Supreme Court summarized its ruling: "[I]f substantial evidence establishes that the defendant intended to and did commit the charged felony with known members of a gang, the jury *may* fairly infer that the defendant had the specific intent to promote, further, or assist criminal conduct by those gang members." (*Albillar*, *supra*, 51 Cal.4th at p. 68, italics added.)

4

Defendant Soy[3] contends his trial counsel could not have had any tactical reason for acquiescing to the instruction, and therefore he may challenge the instruction on appeal. (*People v. Moon* (2005) 37 Cal.4th 1, 28.) Since an analysis of the merits is subsumed within a determination of forfeiture, we proceed to address them.

Defendant Soy insists the instruction is duplicative of the pattern instructions relating to specific intent. While it is true a trial court has authority to *refuse* a special instruction on the ground it is duplicative (*People v. Catlin* (2001) 26 Cal.4th 81, 152), defendant Soy fails to cite any authority for the proposition that a *duplicative* instruction can result in prejudicial error. Therefore, even if correct, defendant Soy has not shown any basis for reversal.

Defendant Soy also asserts the instruction is argumentative. An argumentative instruction is one that invites a jury to draw conclusions favorable to one of the parties from specified evidence in the case. (*People v. McKinzie* (2012) 54 Cal.4th 1302, 1363 [requested pinpoint instruction is argumentative where it designates specified evidence as "mitigating"]; *People v. Benson* (1990) 52 Cal.3d 754, 806; *People v. Gordon* (1990) 50 Cal.3d 1223, 1276.) A proper pinpoint instruction, by contrast, is one which identifies the *theory* of a party as it relates to the burden of proof and neutrally invites a jury to consider whether evidence in the record supports that theory. (*People v. Wright* (1988) 45 Cal.3d 1126, 1135, 1137-1138, 1141, citing inter alia our decision in *People v. Adrian* (1982) 135 Cal.App.3d 335, 338.) The challenged instruction in the present case does not identify specific evidence at trial, or in any respect invite the jury to draw the conclusion that there was an intent to commit an offense with a known gang member. It thus is not argumentative.

---

**3** Defendant Drake, who has not identified any present adverse consequences from the gang enhancement in light of the trial court striking the punishment as to him, joins in this argument.

Finally, defendant Soy asserts in a conclusory manner that the instruction "directed the jury to find" the necessary specific intent for the gang enhancement. The instruction does not do any such thing. It *permits*, not compels, this conclusion. As the trial court *properly* included it in its charge to the jury, the argument is forfeited because defense counsel thus had a reasonable tactical basis for failing to object to it.[4]

## II. An Instruction on Temporary Safety Was Unwarranted

Relying on the fact that defendant Drake did not fire a gun until the parking lot of the drug store, after he and defendant Soy had eluded their pursuers for a moment in the parking lot of the post office, trial counsel for defendant Drake argued at trial that Drake could not be guilty of the gun enhancement (§ 12022.53, subd. (c)) because he fired the gun *after* reaching a place of temporary safety: "Now, you've been instructed that the robbery is over once the perpetrator has reached a place of temporary safety, and in this regard any illegal conduct that you find that [defendant] Drake was responsible for after that point did not occur during the commission of the robbery. It occurred after. So if the enhancement . . . tells you that . . . this had to have been occurring during the commission of a robbery, the discharge of the firearm . . . , it wouldn't apply once that robbery is over. [¶] The evidence is uncontroverted that [defendants] reached a position of temporary safety and then decided to leave. It was only after that that [the victim and his friend] saw them and began chasing them [again]."

---

[4] It is also questionable whether defendant *Soy* could possibly establish any prejudice from this instruction, given the overwhelming evidence of his participation in a gang, evidence that he invoked the gang's name in the course of this robbery, and the absence of any evidence that defendant *Drake* was a known gang member. It is clear that the prosecutor wanted the instruction because there was a paucity of evidence establishing defendant *Drake's* gang involvement beyond his participation in the robbery with defendant Soy who *was* a known gang member. However, as we find the instruction proper and the argument forfeited, we do not need to rule on the issue of prejudice.

Defendant Drake now contends that the trial court should have expressly given an instruction to this effect in the context of the gun enhancement, or trial counsel should have requested it.[5] (The trial court had given an instruction that to be guilty under a theory of vicarious liability, any knowing assistance or encouragement must take place before reaching a place of temporary safety, which is a location where a perpetrator "has successfully escape[d] from the scene, *is no longer being pursued*, and has unchallenged possession of the [victim's] property." (Italics added.)) The People jump directly to the question of prejudice, asserting that even if the jury had been instructed on this principle, it would nonetheless have sustained the enhancement based on a different provision in the statute on which it was instructed, which imposes vicarious liability for another principal firing a gun. (§ 12022.53, subd. (e).)

While trial counsel was allowed to argue this point, and the trial court instructed on temporary safety in connection with vicarious liability, this was a windfall that did not entitle defendant Drake to additional instruction on this point. (Cf. *People v. Szadziewicz* (2008) 161 Cal.App.4th 823, 834 [unwarranted instruction on true self-defense does not entitle defendant to instruction on imperfect self-defense].) The robbery and assault victims expressly did not abandon their pursuit until defendants fled over the wall in the parking lot of the drug store. At best, they *lost sight* of defendants in the parking lot of the post office for a moment (although the assault victim testified that he could still *hear* them making sounds nearby), and they had not yet reached the point of calling off their chase when they saw defendants again. The evidence therefore is insufficient that defendants ever reached a place of temporary safety in the post office parking lot. (Compare *People v. Russell* (2010) 187 Cal.App.4th 981, 986, 992 [the defendant drove

---

**5** Defendant Soy purports to adopt this argument. He does not explain how it has any application to him, because the uncontroverted evidence established that he fired the gun at the time of the initial taking.

7

stolen car unpursued from burglary, saw police vehicle four miles away and 12 minutes later, which triggered reckless evasion of police ending in fatal crash; no place of temporary safety reached after burglary] and *People v. Johnson* (1992) 5 Cal.App.4th 552, 557, 559-561 [*objective* standard; when robber still in flight, has not yet reached place of temporary safety; even though the defendant subjectively felt safe after leaving scene of robbery and after evading different police vehicles, was still in state of constant flight 30 minutes later and more than 20 miles away when he caused fatal car accident] with *People v. Wilkins* (2013) 56 Cal.4th 333, 347-348 [the defendant more than 60 miles away on day after burglary when fatality occurred; no evidence of pursuit or fear of pursuit, so the defendant entitled to instruction on temporary safety].)  Lacking substantial evidence to support it, defendant Drake as a result was not entitled to an instruction on temporary safety in connection with the gun enhancement.  (*People v. Bolden* (2002) 29 Cal.4th 515, 558.)

## DISPOSITION

The judgments in both appeals are affirmed.  The trial court shall prepare a corrected abstract of judgment for defendant Drake reflecting that the second assault conviction was on count *6*, not count 5, and forward a certified copy to the Department of Corrections and Rehabilitation.

          BUTZ          , Acting P. J.

We concur:


       MAURO       , J.


       MURRAY       , J.