Filed 10/9/25  P. v. Woodham CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GENE PAUL WOODHAM,<br><br>    Defendant and Appellant. | E084229<br><br>(Super.Ct.No. CR23647)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Joshlyn R. Pulliam, Judge.  Affirmed.

Richard Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and Tami Falkenstein Hennick, Deputy Attorneys General, for Plaintiff and Respondent.

1

Gene Paul Woodham appeals from the trial court's order denying his petition for resentencing under Penal Code section 1172.6. (Unlabeled statutory citations refer to the Penal Code.) The court denied the petition after holding an evidentiary hearing. Woodham argues that the People did not prove the causation element of murder, and they therefore failed to prove beyond a reasonable doubt that he is guilty of murder. We affirm.

## BACKGROUND

I. *Woodham's murder conviction*

In May 1985, the People charged Woodham with the murder of Joseph Kyler. The information alleged that Woodham "wilfully, unlawfully, and with malice aforethought commit[ted] an injury upon" Kyler in September 1982, which injury proximately caused Kyler's death in November 1984. The information further alleged that Woodham personally used a deadly and dangerous weapon (a hammer) within the meaning of section 12022, subdivision (b).

Woodham's bench trial took place in July 1986. The court found him guilty of second degree murder and found the personal use allegation to be true. The court sentenced Woodham to 15 years to life in prison, plus one year for the personal use enhancement.[1] (§§ 190, subd. (a), 12022, subd. (b)(1).)

---

[1] Woodham's opening brief states that he pled guilty to second degree murder, and the brief cites a minute order reflecting that he pled. But the minute order contains the following disclaimer at the top: "DATES OF PLEA AND SENTENCE ARE ESTIMATED [¶] CASE WAS FILED PRIOR TO SYSTEM BEING ACTIVATED.

*[footnote continued on next page]*

II.      *Woodham's petition for resentencing*

In March 2023, Woodham filed a petition for resentencing under section 1172.6. The People argued that he was prima facie ineligible for relief, because the record of conviction showed that he was the actual killer. The court found that Woodham had stated a prima facie case for relief and issued an order to show cause.

In anticipation of the evidentiary hearing, the People filed a brief arguing that Woodham was ineligible for resentencing because he was the actual killer. They submitted a number of exhibits, including certified transcripts of Woodham's parole hearings in 1991, 1996, 2002, and 2021.

At the parole hearing in 1991, Woodham testified that he met Kyler at a bar. Woodham was drinking, and Kyler offered him a place to stay. The two of them continued to drink at Kyler's house. Kyler made sexual advances toward Woodham, who pushed Kyler away. Woodham "kind of blacked out," but he recalled "wrestling around," picking up an object, and swinging the object until Kyler dropped. He did not recall how many times he hit Kyler. He was "very drunk" at the time.

THESE MINUTES ARE NOT TO BE USED AS A TRUE AND ACCURATE COPY OF THE MINUTES ENTERED."

The minute order does appear to be inaccurate, to the extent that it reflects a conviction by plea. We draw our summary of the bench trial proceedings from exhibits submitted by the People in opposition to Woodham's petition for resentencing. The People obtained the exhibits from the court's original file. They include minute orders reflecting the five-day bench trial in 1986. In addition, the abstract of judgment shows that Woodham was convicted after a bench trial, and defense counsel's oral argument in support of the petition for resentencing acknowledged that Woodham was convicted after a trial. According to the People, the reporter's transcript of the trial is no longer available because of the age of the case.

3

At the parole hearing in 1996, Woodham again testified that he met Kyler at a bar, and Kyler invited him to Kyler's home. Once there, Woodham severely beat Kyler with a hammer after Kyler made sexual advances toward him. Woodham fled and did not call for help. He was intoxicated during the incident and did not remember much of it. Woodham acknowledged that he was responsible for putting Kyler in the hospital, but he declined to take responsibility for Kyler's death. As far as Kyler's death, Woodham stated: "I don't know what kind of care he was given in the hospital, what . . . caused it or did not cause it."

At the parole hearing in 2002, Woodham again testified that he met Kyler at a bar, went home with him, and attacked him in response to sexual advances. Woodham again did not recall how many times he hit Kyler but was told that it was 20 to 30 times. Kyler died over two years after Woodham beat him with the hammer. During that period, Kyler was in an outpatient care facility once, but he was otherwise in the hospital. Kyler died after contracting pneumonia.

At the parole hearing in 2021, Woodham described the events somewhat differently. He said that he was hitchhiking when Kyler picked him up and invited him to Kyler's house. Woodham was drinking and accepted Kyler's offer, thinking that he would steal Kyler's car. He meant to hit Kyler with the hammer one time and render Kyler unconscious so that he could take the car. Kyler would not "go down," so Woodham continued to hit him.

Woodham's brief in support of his petition argued that the People had to prove that his beating of Kyler caused Kyler's death, and they had not offered any evidence of causation.

At the evidentiary hearing in July 2024, the trial court admitted into evidence Woodham's parole hearing testimony. The court concluded that the testimony established that Woodham did not have any accomplices, and he alone killed Kyler. The court also found that Woodham's testimony showed that the killing "was a murder." The court therefore denied Woodham's petition.

DISCUSSION

Woodham contends that the court erred by denying his petition, because the People failed to prove beyond a reasonable doubt that his beating of Kyler caused Kyler's death. The argument lacks merit.

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) eliminated natural and probable consequences liability for murder and narrowed the definition of first degree felony murder by amending sections 188 and 189. (*People v. Gentile* (2020) 10 Cal.5th 830, 843, 847, superseded by statute on another ground as stated in *People v. Wilson* (2023) 14 Cal.5th 839, 869.) Section 188, subdivision (a)(3), now prohibits imputing malice based solely on an individual's participation in a crime and requires proof that a principal in a crime acted "with malice aforethought" to convict a principal of murder, except as stated in section 189, subdivision (e). Subdivision (e) of section 189

5

now provides that "[a] participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [of section 189] in which a death occurs is liable for murder only if" the People prove one of the following:  (1) The person was the actual killer (§ 189, subd. (e)(1)); (2) the person "with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree" (*id.*, subd. (e)(2)); or (3) the person "was a major participant in the underlying felony and acted with reckless indifference to human life" (*id.*, subd. (e)(3)).  (*People v. Curiel* (2023) 15 Cal.5th 433, 448 (*Curiel*).)

Senate Bill No. 1437 created section 1172.6 (formerly section 1170.95) as a mechanism for retroactive application of the changes in the law.  (*People v. Strong* (2022) 13 Cal.5th 698, 708 & fn. 2 (*Strong*).)  A defendant convicted under a now-invalid theory of murder liability may petition the court to vacate the conviction and be resentenced if they could not presently be convicted of murder because of the changes to sections 188 and 189.  (§ 1172.6, subd. (a).)  If the petitioner makes a prima facie showing that they are entitled to relief, then the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner.  (§ 1172.6, subd. (c), (d)(1).)  At the evidentiary hearing, the People must prove beyond a reasonable doubt that the petitioner is guilty of murder under the law as amended by Senate Bill No. 1437.  (§ 1172.6, subd. (d)(3); *Strong*, at

6

p. 709.) The trial court acts as an independent factfinder, and we review the court's factual findings for substantial evidence. (*People v. Hill* (2024) 100 Cal.App.5th 1055, 1065-1066.)

Although section 1172.6 authorizes an evidentiary hearing, the "parties are not placed in the same position as if no trial had occurred." (*Gomez v. Superior Court* (2024) 100 Cal.App.5th 778, 788.) The Legislature did not intend "to permit wholesale relitigation of findings supporting murder convictions in the context of section 1172.6 resentencing." (*Strong*, *supra*, 13 Cal.5th at p. 715.) The evidentiary hearing is not "a whole new trial on all the elements of murder. Instead, the parties will focus on evidence made relevant by the amendments to the substantive definition of murder." (*People v. Clements* (2022) 75 Cal.App.5th 276, 298.) In addition, factual findings made at the defendant's original trial are "generally preclusive in section 1172.6 proceedings" if they involve elements of murder that are unchanged. (*Curiel*, *supra*, 15 Cal.5th at p. 453; *id.* at p. 454 ["it is difficult to foresee a situation in which a relevant jury finding, embodied in a final criminal judgment, would not meet the traditional elements of issue preclusion"].) The petitioner "cannot use a section 1172.6 resentencing hearing to relitigate facts already determined, whether by plea, admission, or verdict." (*People v. Rodriguez* (2024) 103 Cal.App.5th 451, 458.)

The court in this case correctly rejected Woodham's argument that the People had to relitigate causation. "Murder includes both actus reus and mens rea elements. To

7

satisfy the actus reus element of murder, an act of either the defendant or an accomplice must be the proximate cause of death." (*People v. Concha* (2009) 47 Cal.4th 653, 660, italics omitted.) Proximate cause has long been an element of murder, including in 1986 when Woodham was convicted. (See *People v. Harrison* (1959) 176 Cal.App.2d 330, 345 ["the doctrine of proximate cause is applicable in criminal proceedings in determining responsibility for a person's acts"], disapproved on another ground by *People v. Washington* (1965) 62 Cal.2d 777, 783.) Proximate cause "does not implicate concerns regarding imputed mens rea and vicarious liability identified in . . . Senate Bill No. 1437." (*People v. Carney* (2023) 14 Cal.5th 1130, 1147.)

By convicting Woodham of Kyler's murder after the bench trial, the trial court necessarily found that Woodham's acts or those of an accomplice were the proximate cause of Kyler's death. Woodham could not relitigate that factual finding, which was unaffected by Senate Bill No. 1437. "Indiscriminate relitigation of findings supporting murder convictions [is] not permitted." (*People v. Rodriguez*, *supra*, 103 Cal.App.5th at p. 459.) Woodham does not challenge the court's finding at the section 1172.6 evidentiary hearing that "he, and he alone, committed this murder." Nor does he challenge any other aspect of the court's express or implied findings. He therefore fails to show that the court erred by denying his section 1172.6 petition.

## DISPOSITION

The order denying Woodham's petition for resentencing under section 1172.6 is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ

J.

We concur:

McKINSTER

Acting P. J.

MILLER

J.